# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor,

   Plaintiff,

  v.            No. CIV 15-391 WJ/KK

BRANCH 504, NATIONAL
ASSOCIATION OF LETTER CARRIERS,

   Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### and
## DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

   THIS MATTER comes before the Court upon the following motions:  Plaintiff's Motion for Partial Summary Judgment, filed October 30, 2015 **(Doc. 22)** and Defendant's Cross-Motion for Partial Summary Judgment, filed December 7, 2015 **(Doc. 32)**.  Having reviewed the parties' written submissions and the applicable law, the Court has determined that Plaintiff's motion shall be granted on all issues raised and that Defendant's motion shall be denied on all issues raised (exhaustion, notice and eligibility/disqualification).

## BACKGROUND

   This action alleges that Branch 504 of the National Association of Letter Carriers ("Branch 504" or "union" or "Defendant") violated sections 401(c) and (e) of Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 481(c), (e), in its regular periodic election of officers on November 19, 2014.[1]  The Department of Labor ("DOL"

_____

[1]   Section 401 of the LMRDA has been codified at 29 U.S.C. §481.

or "Plaintiff") contends that Branch 504 failed to provide notice of the election in violation of § 401(e) and that it ruled an eligible candidate ineligible to be elected to office in violation of § 401(e).  The candidate in this case who was allegedly ruled ineligible for branch office, and who filed the complaint with the Department of Labor ("DOL") is Angel Martinez ("Martinez" or "Complainant Martinez").  The complaint seeks an order setting aside the November 2014 election for president, vice president, recording secretary, treasurer, sergeant at arms, and trustee (five positions) and requiring a new election to be conducted for those offices under the Secretary's supervision. Plaintiff contends that Branch 504 violated 29 U.S.C. §481(e) of the LMRDA by failing to provide adequate notice about the election, and by denying Martinez the right to be a candidate and run for office because of criminal charges and other alleged actions that Defendant believed jeopardized its liquor license for the bar it operates.

**I.     Facts**[2]

Branch 504 of NALC is a labor organization engaged in an industry affecting commerce within the meaning of §§3(i), 3(j), and 401(b) of the LMRDA, 29 U.S.C. §§402(i), 402(j) and 481(b).  Branch 504 conducted an election of officers on November 19, 20214 and that election was subject to the provisions of Title IV of the LMRDA.  Of the approximately 680 eligible voters, 179 members voted.   At all relevant times, Martinez was a member in good standing of Branch 504.  He filed a complaint about Branch 504's November 19, 2014 election with the Department of Labor on March 9, 2015.

      A.     Facts Regarding Exhaustion

---

[2] The facts as presented here are undisputed unless noted.  The Court omits reference citations because of the number of exhibits Plaintiff has submitted—over 400 pages.  Most of the exhibits are divided by tabs into further "parts" or subdivisions and so for ease of reference for those exhibits containing multiple pages, the Court will, where necessary, refer to both  the Docket number and page and the exhibit number.

The multistep procedure for protesting Branch 504 elections is set forth in the NALC Regulations Governing Branch Election Procedures ("RGBEP" or "Regulations").  On October 21, 2014, Branch 504 President David Pratt issued an announcement of the election committee members, which included a notice stating that "[a]ny requests or correspondences are to be directed to the Election Committee" at a designated post office box.[3]  The RGBEP requires that the initial protest be "mailed to the Chairperson of the Branch Election Committee within five (5) days after the date of the election."  On November 24, 2014, Branch 504 members Angel Martinez, Dee Dee Molina, Martin "Mo" Molina, and Marie Montano ("complainants") mailed a packet containing a protest letter and supporting materials, addressed to the attention of Branch 504 Election Committee Chair John Trujillo. The complainants' protest letter bore the election committee's post office box address, but the complainants sent the packet to the branch office's physical address instead of the election committee's designated post office box.  Pratt received and signed for the packet on November 25, 2014.  The election committee received the packet on November 29, 2014. The RGBEP requires the election committee to respond to an initial election protest in writing within thirty days.

The election committee denied the complainants' protest as untimely by letter postmarked December 27, 2014. The letter stated that the complainants had violated the NALC RGBEP by mailing their protest to the branch office instead of to the election committee.  After reiterating that it was not waiving its timeliness claim, the election committee considered and rejected the complainants' protests.

---

[3]  Defendant's response to this fact provides the reasons the Branch decided to maintain a separate mailing address for election matters, but does not dispute the fact.  Around 2006 or so, the Branch received complaints that Election Committee matters needed to be independent from the Branch Officers and that storage of absentee ballots at the Branch Office was improper.  Plaintiff does not dispute the reasons given by Defendant for having a separate mailing address for election matters.

The RGBEP provides that the election committee's decision may be appealed to the branch executive board within five days of the election committee's decision. Martinez and the other complainants submitted an appeal dated December 29, 2014, to the Branch 504 executive board.  The RGBEP requires the branch executive board to respond to the appeal in writing within thirty days.  By letter dated January 27, 2015, the Branch 504 executive board responded that there had been no timely appeal because "[n]o appeal was ever sent to the Branch Election Committee Chairperson"; rather, the complainants had sent "a packet of what appears to be concerns to the NALC Branch office." The board declined to address the merits of the complainants' appeal but stated that it agreed with the election committee that "none of your concerns would have affected the outcome of the election." The branch executive board's decision was certified as delivered on February 6, 2015.

The RGBEP provides that the branch executive board's ruling may be appealed to the branch's next scheduled meeting by notifying the branch recording secretary of the intention to appeal to the branch membership within five days of receiving the branch executive board's ruling. Martinez and the other complainants submitted an appeal to the branch recording secretary by letter dated February 7, 2015.  Election Committee Chair Trujillo received and signed for the delivery of the appeal to the branch membership on February 9, 2015.  The appeal by Martinez and his fellow complainants was not read for decision by the membership at the next branch membership meeting on February 18, 2015.  Defendant does not dispute the facts regarding an appeal from the branch executive board based as to the actions taken by the complainants. However, they disagree on whether those actions satisfied RGBEP requirements at this level of the process. Plaintiff points out that the RGBEP requires that "[m]embers present at the next scheduled meeting of the branch must decide the merits of the appeal" and that "[a]t the

regular meeting of the branch following receipt of the appeal, the Recording Secretary must present the appeal and all attached written materials to the members present at the meeting." Pltff's Fact 26. The Branch must then prepare its written reply within twenty days.

Defendant maintains that Plaintiff is incorrect in relying §§ 21.4 and 21.41 of the RGBEP because those provisions concern the *subsequent* level in the appeals process to the NALC National Committee of Appeals rather than an appeal from the branch executive board. Plaintiff appears to concede this particular issue by not disputing Defendant's contention that the governing provision for this level of the internal appeals process is §21.3, and not §21.4 or §21.41. *See* Pltff's Ex. 4, Doc. 23-10 at 1. Thus, there are no factual disputes regarding what actions were taken by the complainant at this part of the appeal, although the parties disagree on whether complainants exhausted the appeals process based on the relevant Regulations.

The RGBEP provides that the decision of the branch meeting may be appealed to the NALC National Committee on Appeals by filing the appeal with the branch recording secretary within twenty days of the date of the branch decision. Martinez and the other complainants appealed to the NALC National Committee on Appeals by submitting an appeal to the branch recording secretary by letter dated March 5, 2015. Branch Recording Secretary Valerie Chacon received and signed for the delivery of the appeal to the NALC National Committee on Appeals on March 19, 2015. Martinez filed a complaint with the Department of Labor on March 9, 2015.

B.     Facts Regarding Notice

Branch 504 mailed two combined nomination and election notices to its membership by publishing them in union newsletters.

1.     *First Election Notice*

Branch 504 published the first combined nomination and election notice in the July–August 2014 issue of its newsletter, *El Sol*. The first election notice appeared on page 7 of El Sol under the heading "Nomination of Branch Officers."  In Fact 35, Plaintiff states that the cover of the July–August 2014 issue of El Sol contained no reference to the election notice on page 7. Defendant contends that this fact is incomplete and misleading because the newsletter is folded in half and sealed before mailing and thus what appears to be on page 7 is actually the first thing someone would see when opening the newsletter from the addressee side of the mailing.

The first election notice read in its entirety as follows:

> In accordance With Article 5 of the National Constitution and the Branch Bylaws, this is official notice to all members of Branch 504 that nominations for the office of President, Vice president, Secretary, Treasurer, Health Benefits Rep, Sergeant-at-arms and five Trustees will be held at the regular Branch Meeting, September 17, 2014. Those wishing to be nominated must accept their nomination in person or must submit their willingness to be nominated in writing to the Branch Secretary, attesting that they have not held a supervisory position for two years, prior to the September Meeting. If necessary, the election will be held on November 19, 2014 prior to the Regular November Branch Meeting.

Ex. 13.

> ###    2.    *Second Election Notice*

Branch 504 published the second combined nomination and election notice in the August 2014 issue of NALC's newsletter, the *Postal Record*, appearing on page 66 of the newsletter in the section "Election Notices" and under the heading "Albuquerque, New Mexico." Ex. 14.  This second notice read as follows:

> This is official notice to the members of Branch 504. Branch 504 will be accepting nominations for all elected officers, to include president, vice president, secretary, treasurer, health benefits representative, sergeant-at-arms and five trustees. The term of all officers is two years. The nominations will occur at the Sept. 17 branch meeting at 123 Quincy NE, Albuquerque, at 6:30 p.m. Nomination will be taken from the floor. The officers who are automatic delegates to the national convention by virtue of their office are president, vice president, secretary, treasurer, health benefits officer and sergeant-at-arms.

Election date is Nov. 19 prior to the regular branch membership meeting, which starts at 6:30 p.m. Absentee ballots shall be available to eligible member. The election committee shall send absentee ballots and voting instructions in a timely manner when requested by a member. The election will be via a secret ballot.

Ex. 14.   Plaintiff's Fact 39 states that the cover of the *Postal Record* contained no reference to Branch 504's election notice on page 66.  Defendant concedes this fact, but claims it is incomplete and therefore, misleading because the Table of Contents does clearly identify the page on which the election notices are located, that is, page 66.

### 3.   Posting on Bulletin Boards

Branch 504 also prepared a combined nomination and election notice for posting on NALC bulletin boards at members' workstations. Its heading was "PLEASE POST ON ALL NALC BULETIN [SIC] BOARDS," and it read in its entirety as follows:

This is Official Notice to the members of Branch 504. Branch 504 will be accepting nominations for all elected officers to include President, Vice-President, Secretary, Treasurer, Health Benefits Representative, Sergeant at Arms, and 5 Trustees. The term of all officers is two years. The nominations will occur at the September 17, 2014 Branch Meeting at 123 Quincy NE Albuquerque, NM 87108 at 6:30 pm. Nominations will be taken from the floor. The officers that are automatic delegates to the National and State Conventions by virtue of their office are President, Vice President, Secretary, Treasurer, Health Benefits Officer and Sergeant at Arms. Election date is November 19, 2014 prior to the Regular Branch Membership Meeting which starts at 6:30 pm. Absentee ballots shall be available to eligible member. The Election Committee shall send out absentee ballots and voting instructions in a timely manner when requested by a member. The election will be via a secret ballot.

Ex. 15.

### C.   Facts Regarding Angel Martinez' Eligibility for Office

Plaintiff's Fact 42 states that "[t]he NALC Constitution contains no provisions regarding eligibility for branch office."  Defendant acknowledges the accuracy of this fact, yet contends it is incomplete and therefore, misleading because the union's constitution otherwise specifies the duties of candidates for union office.  The Court finds that this fact remains undisputed and that

Defendant's contentions are best described as argument, which the Court will consider during the discussion on this issue.

The RGBEP provides that all regular members are eligible to hold branch office except those who have served as supervisors in the previous two years and those convicted of the following crimes:

> robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of Title II or III of the Labor-Management Reporting and Disclosure Act, any felony involving misuse of such person's position in a labor organization to obtain an illegal gain at the expense of the members of the labor organization, or conspiracy to commit any such crimes, or attempt to commit any such crimes . . . .

NALC RGBEP § 4.12.  Branch 504's bylaws state that all regular members are eligible to hold branch office except those who have been in or applied for supervisory positions in the previous two years.  Branch 504's bylaws list the branch president's duties, in relevant part, as follows:

> The President shall preside at all meetings of the Branch, preserve order, have general supervisory powers over the Branch, see that the officers perform their duties to the fullest extent of their capability, enforce the Constitution, Bylaws, rules and regulations of the Branch, appoint all committees not otherwise provided for, give the deciding vote when there is a tie, sign all documents requiring his/her signature, examine and announce the results of all balloting and other votes. The President shall not make any motion or take part in any debate while in the chair, he/she shall ascertain from the Financial Treasurer the amount of money received since the last meeting. . . . He/She shall see that all officers acquaint themselves with the National Agreement and Local Memorandum of Understanding. He/She by virtue of his/her office shall be Chief Shop Steward for the Branch and may delegate such authority to another member. . . . The President shall submit monthly articles to the publisher of the newsletter. The President shall call and direct all Shop Stewards' meetings. . . .

Ex. 17, Doc. 23-29 at 7 (Branch 504 bylaws).

Branch 504 owns and operates a bar, which requires it to hold a club liquor license issued by the Alcohol and Gaming Division of the New Mexico Regulation and Licensing Department.

Martinez was charged with driving while intoxicated (DWI), first offense—a misdemeanor—in June 2013 and convicted in February 2014.

In May 2014, Martinez, who was then branch vice president, prepared a statement for submission to the Alcohol and Gaming Division, certifying that he had no control over the ordering of liquor and engaged in no direct supervision of the bartenders. Doc. 31-2 at 4 (attachment to Trujillo Aff.). In May 2014, Martinez also submitted to the Alcohol and Gaming Division a Personal Data Information and Affidavit on which he swore that he had not been convicted of a felony, had not been convicted of two separate misdemeanor violations of the New Mexico Liquor Control Act in any calendar year, and had never had an application for a liquor license denied or had a liquor license in which he held any interest in any state suspended or revoked.   Ex. 3, Doc. 23-5 at 10. In August 2014, Martinez was again charged with a misdemeanor DWI.  Ex. 18.  At Branch 504's nomination meeting on September 17, 2014, Martinez and Pratt were nominated for president.  At the time of the nomination meeting on September 17, 2014, Martinez had one DWI conviction, a misdemeanor.

 On October 31, 2014, Martinez's DWI conviction was reversed and the case was remanded for a new trial. Ex. 18.  By letter dated November 4, 2014, the branch election committee advised Martinez that he was ineligible to run for and hold the office of branch president. The letter stated that the election committee had "determined that your ongoing legal issues and other relevant facts render you ineligible and unable to perform the duties required of the Office of President of Branch 504." The letter asserted that Martinez was rendered ineligible for office by "section 4.12 of the NALC Regulations Governing Branch Election Procedures and New Mexico State Law."  Ex. 20.

On November 6, 2014, the branch election committee announced that Martinez was disqualified and that Pratt had been reelected president by acclamation. Ex. 21.  At the time of the branch election committee's announcement of his disqualification on November 6, 2014, Martinez had no DWI convictions. On January 5, 2015, Martinez's second DWI charge was dismissed.  Ex. 18.

      D.    <u>Defendant's Additional Facts</u>

Defendant provides additional facts which round out the narrative background of this case and which are undisputed except for their legal significance.

For the past twenty-two years, elections at the Branch have always been held in exactly the same manner. The polls were located at the Branch Meeting Hall, opened at noon, and closed immediately prior to the 6:30 pm Branch meeting.

Branch 504 operates a private club ("Club"), which requires it to have a valid liquor license from the State of New Mexico. Each month, the membership votes to continue to fund the private club.  Trujillo Aff. (Doc. 31-2), ¶ 9; Pratt Aff. (Doc. 31-1), ¶ 16. As part of this factual statement (Deft's Add'l Fact 60), Defendant contends that as a result of the Club's having a liquor license, one of the duties of the President pursuant to the Constitution and bylaws is to execute the necessary documents for the Branch to maintain its license. Plaintiff disputes whether maintaining the liquor license is actually one of the duties of the Branch President, based on the absence of any such language in either the NALC Constitution or the Branch Bylaws.  Because the language in the union's bylaws or constitution speaks for itself, the question boils down to what legal conclusion can be drawn from the undisputed facts.

In Additional Fact 61, Defendant states that the Branch 504's election committee has the task of determining the eligibility of each candidate for office and was faced with the task of

10

determining whether Martinez' recent DWI arrests and false statement made to the state regulatory agency jeopardized the Club's license or expose Branch 504 to liability.  Defendant's Additional Fact 62 states that as part of its investigation, members of the Election Committee met with Alicia Duran, a Citations Manager with the New Mexico Regulation and Licensing Department, Alcohol and Gaming Division.  When Ms. Duran was made aware of Mr. Martinez' statement and that it was untrue, she directed Branch 504 to "fix it" because if not, she could prosecute Branch 504.  In Additional Fact 63, Defendant states that when Branch 504 President David Pratt learned of Ms. Duran's communication, he immediately contacted her to determine what Branch 504 could do to avoid prosecution based on Mr. Martinez's false statement submitted as part of Branch 504's renewal application. Ms. Duran told him that she felt like Branch 504 was doing the right thing and would give Branch 504 some time to take care of the matter. She also indicated that the agency would consider the situation to be serious if Mr. Martinez remained an officer of the Branch without correcting the false statement.

Plaintiff does not dispute that part of Defendant's  Additional Facts 61-63 stating that the branch election committee had the authority to determine a candidate's eligibility for branch office, but does not confirm—or rebut—the fact that Martinez made the false statement to the Alcohol and Gaming Division.  Rather, Plaintiff contends that, even assuming that Martinez' conduct jeopardized Branch 504's liquor license, that conduct was not relevant to his eligibility to run for union office.

David Pratt, President of Branch 504, met with Mr. Martinez and instructed him to correct the statement or resign, but Martinez refused.  As a result, Mr. Pratt removed him of his duties for the remainder of his term as Vice President, and sent a letter to Ms. Duran identifying the steps taken to rectify the situation and avoid prosecution. In Fact 65, Defendant states that it

was Martinez's false statement to the regulatory agency and consequent inability to perform the duties of office which rendered Martinez unable to perform the duties of office, not his DWI record.  Ex. 3 at 2 (letter explaining the basis of Mr. Martinez's disqualification).  Plaintiff disputes this fact to the extent that it represents a change from Defendant's earlier position in which Branch 504 claimed that Martinez was disqualified from running for office based on his DWI record.  The Court finds that this dispute is immaterial because in the end, it will matter little whether the stated reason for Martinez' disqualification was his DWI record or the false statement on the renewal application for Branch 504's liquor license under the relevant legal standard governing the Court's analysis.

## II.     Relevant Statute

The principal goal of Title IV of the LMRDA "is to insure 'free and democratic' [union] elections." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470 (1968); *Wirtz v. Hotel, Motel & Club Emps. Union, Local 6*, 391 U.S. 492, 496 (1968). Section 402(c) of the LMRDA requires a court to declare a contested election void and order a new election under the government's supervision where a violation of § 401 "may have affected the outcome of the election." 29 U.S.C. § 482(c). In *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, the Supreme Court held that once the Secretary establishes a violation of § 401, he has established a prima facie case that the violation may have affected the outcome of the election, and the burden of proof shifts to the union to produce tangible evidence that the results of the election would have been the same absent the violation. 391 U.S. 492, 506–07 (1968); *see also Usery v. Dist. 22, United Mine Workers*, 543 F.2d 744, 750 & n.4 (10th Cir. 1976). A court does not need to find that a proven violation actually affected the outcome of an election; it merely needs to find that the violation may have affected the outcome. 29 U.S.C. § 482(c).

12

Although § 402(c) of the LMRDA provides for relief "after a trial upon the merits," summary judgment may be appropriately awarded in a case brought pursuant to that section so long as the standard Rule 56 requirements are met. *Brennan v. Local Union 639, Teamsters*, 494 F.2d 1092, 1096 (D.C. Cir. 1974); *see, e.g., Hodgson v. Dist. 6, United Mine Workers*, 474 F.2d 940, 948 (6th Cir. 1972).

## III.   Standard of Review

Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).  When applying this standard, the court must examine the factual record in the light most favorable to the party opposing summary judgment, extending to that party all reasonable factual inferences. While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim.  If the movant carries this initial burden, the nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Id.; Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Substantive law will identify which facts are material for purposes of summary judgment. If there is no genuine issue for trial, the court will determine whether the moving party is entitled to judgment as a matter of law. *Liberty Lobby,* 477 U.S. at 238

Ordinarily, when reviewing a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party.  *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006). The parties' filing of cross-motions for summary judgment does not change this

standard of review.  *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 249 (6th Cir. 1991)).  Where

the parties file cross motions for summary judgment, the court is entitled to assume that no

evidence needs to be considered other than that filed by the parties, but summary judgment is

nevertheless inappropriate if disputes remain as to material facts.  *James Barlow Family Ltd.*

*Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997); *see Buell Cabinet*

*Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (Cross-motions for summary judgment

are to be treated separately; the denial of one does not require the grant of another).

In this case, the material facts themselves are largely undisputed but the parties disagree

on the legal interpretation of those facts.  Facts which are purportedly "disputed" are not relevant

or material, or are essentially legal issues which the Court must determine.

## DISCUSSION

The parties' cross-motions in this case seek summary judgment on the same issues, and

both parties incorporate the facts and arguments contained in their briefs for Plaintiff's motion

for partial summary judgment on the following issues:

1.      Whether Complainant Martinez properly exhausted internal union remedies;[4]

2.      Whether Branch 504 violated §401(e) of the LMRDA by failing to provide notice of the
election; and

3.      Whether Branch 504 violated §401(e) by ruling an eligible candidate ineligible to run for
office.

## I.      Exhaustion

In its cross-motion, Defendant contends that Martinez failed to exhaust his internal union

remedies prior to filing the complaint with the Department of Labor, Defendant claims that

Martinez' failure to exhaust internal union remedies, and as a result, the Branch 504 membership

---

[4] Only Defendant seeks summary judgment on the exhaustion issue.

was deprived of the opportunity to decide his case and defend it to the national body. Plaintiff contends that Martinez satisfied the union's internal appeals process requirements.

.

A.     Mailing of Election Protests

First, Defendant contends that Martinez and the other complainants did not mail his initial appeal to the proper entity when the election protests were mailed to the Branch Office's physical address instead of the Election Committee's post office box.

The LMRDA requires a complainant to exhaust internal union remedies prior to filing a complaint with the Department of Labor.  29 U.S.C. §482(a)(1).  The question here is whether mailing the protest to the Branch's physical address instead of the Election Committee's post office box constitutes a failure to follow the union's election regulations which require that the initial protest be "mailed to the Chairperson of the Branch Election Committee within (5) days after the date of the election."  Ex. 4, Doc. 23-9 at 12.

Union regulations specify only that the initial protest be "mailed" to the Chairperson. The complainants did in fact mail their protest to the Chairperson and the Chairperson did in fact receive the protest packet.  The Court agrees with Plaintiff that this situation smacks of the "procedural niceties" that should not be part of internal union remedies.  *See Hodgson v. Local Union 6799, United Steelworkers,* 403 U.S. 333, 341 n.6 (1971) ( "members should not be held to procedural niceties while seeking redress within their union, and exhaustion is not required when internal union remedies are unnecessarily complex or otherwise operate to confuse or inhibit union protestors").  The announcement issued by Mr. Pratt advising the membership of a separate mailing address for election matters is not part of the union's internal grievance

procedure at the level of the initial protest, which the complainants met by mailing the protest to the election committee chairperson in a timely manner.

B.     Appeal to Branch 504 Membership

Second, Defendant contends that complainants did not complete the process in appealing the results of the Executive Board to the next Branch 504 membership meeting. It is undisputed that Martinez submitted an appeal to the Branch 504 executive board, but Defendant argues that complainants only mailed notice of their *intention* to appeal the election results but never actually presented their appeal to the membership for a vote.  As mentioned previously, Plaintiff appears to acknowledge that it incorrectly relied on §21.41 and §21.42 of the RGBEP in stating that the Recording Secretary must present the appeal to the membership. Those provisions relate to the subsequent stage of an appeals process to the National Committee on Appeals. The provision governing an appeal to the branch membership is §21.3 of the Regulations which states:

> If an aggrieved member is dissatisfied with the ruling of the Branch Executive Board, the member may appeal to the next scheduled meeting of the branch. Within five (5) days after   receiving the ruling of the Branch Executive Board, the aggrieved member **must notify the Branch Recording Secretary of his or her intention to appeal to the branch**. This notice must be in writing and sent by certified mail, return receipt requested. Members present at the next  scheduled meeting of the branch must decide the merits of the appeal.

Ex. 4, Doc. 23-10 at 1 (emphasis added). The language in §21.3 does not specify whether the Recording Secretary or the complainant must actually raise the matter at the membership meeting, and there is no language in the provision which could be interpreted to put a rank-and-file member on notice that he is responsible for the presentation of the protest. Moreover, such an interpretation would allow Branch 504 to defeat a protest simply by failing to bring up an agenda item that it concedes was raised in advance by a member and thus, in full compliance with the

union's bylaws, would sanction the use of the "procedural niceties" that have been discouraged by the Supreme Court.

The purpose of the exhaustion requirement is to ensure notice to a union about a complaint. It is clear that Branch 504 had actual notice of the complainants election protest, yet took no action to enable membership to consider the appeal. Instead, Defendant had notice of the protest and chose not to bring it up for a membership vote. Ex. 22 (Minutes). Under this set of facts, all of which are undisputed, the union cannot now complain that Martinez did not exhaust the appeals process. Therefore, summary denied is DENIED to Defendant, with the Court finding as a matter of law that Martinez properly exhausted internal union remedies.

## II.    Adequate Notice

Plaintiff contends that Branch 504 violated §401(e) of the LMRDA by failing to provide notice of the election, and that the violation may have affected the outcomes of the races for the positions of vice president, recording secretary, treasurer, sergeant at arms, and trustee. Plaintiff cites to two categories of notice violations, based on placement and content of election notices.

The election notice provision in §401(e) provides as follows: "Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address." 29 U.S.C. § 481(e). The Department's interpretive regulations require the election notice to specify "the date, time and place of the election" and to "be in such form as to be reasonably calculated to inform the members of the impending election." 29 C.F.R. § 452.99. In addition, if a union publishes the notice in its newspaper or newsletter, it should make the inclusion of the election notice "readily apparent to each member," either by placing the notice "conspicuously . . . on the front page of the newspaper" or by including on the front page "a conspicuous reference to the inside page where the notice appears." 29 C.F.R. § 452.100(a).

A.      Placement of Election Notices

Plaintiff claims that the first notice, published in *El Sol*, did not meet the notice requirements because it was not placed on the front page.  Defendant maintains that the notice *was* placed on the front page, considering that the newsletter is folded in half and sealed before mailing and points out that if one were to open the newsletter, the notice of election would be the first thing seen.  Opened the other way, one would first see the President's Message on page 1 (that is, the center of the folded mailing) which notes that the issue contains the notice of the upcoming nominations and elections of officers.

Not having an actual copy of the folded mailing, the Court had to rely on visualizing what one would see upon unsealing and unfolding the newsletter.  Once unfolded, one has a choice of opening the newsletter from what Defendant calls "the addressee side" or the "other way."  Manipulating the pages in Exhibit 16 to simulate a folded newsletter, the Court opened the mailing to the President's Message on page 1, the center of the folded mailing—as Defendant suggested would happen.  However, the only way to open the newsletter to the election notice on page 7 is to unfold the mailing and open it from the "addressee side"—which is unmistakably the *back* page of the newsletter.  While Defendant is correct that opening the newsletter from the back page would indeed reveal the election notice on page 7, it would be highly unusual for someone to read a newsletter (or magazine or book, for that matter), starting from the back page.  At any rate, expecting someone to open the newsletter from the back instead of the front is hardly in keeping with the requirements of 29 C.F.R. §452.100(a).

Plaintiff is therefore entitled to summary judgment on this first notice issue because Defendant has raised no factual dispute suggesting that the election notice was either on the front page of *El Sol* or that the front page (in this case, the President's Message) contained a

"conspicuous reference" to the page on which the election notice appears.  Defendant is denied summary judgment on this issue.

Plaintiff also contends that the second notice did not meet the LMRDA's notice requirements because it was not on the cover of the August 2014 *Postal Record*.  The cover also contained no reference to Branch 504's election notice that was located on page 66 in the issue. Defendant concedes that the front cover lacked any election information, but points to the Table of Contents on page 2 of the magazine which identifies the location of the election notices— again, at page 66. Doc. 31-1 at 16. The Court finds that the placement of this second notice ventures further away from the specific requirements described of 29 C.F.R. §452.100(a).  The requirement that an election notice be made "readily apparent" to members does not mean having to resort to the Table of Contents on page 2 and be redirected to page 66 in the magazine. *Chao v. Local 538 of the United Food & Commercial Workers Int'l Union,* 307 F.Supp.2d 1027, 1035 (W.D.Wis. 2004) (union members "are under no obligation to search the [union's publication] for important announcements of upcoming elections").  As a result, the Court finds that Plaintiff is entitled to summary judgment on the issue of whether the second notice published in the *Postal Record* satisfied notice requirements under the LMRDA and the statute's interpretative regulations.  The Court's granting of summary judgment to Plaintiff necessarily precludes summary judgment for Defendant on this same issue.

B.     Content of Election Notices

Plaintiff also challenges the election notices in their failure to inform members about the time the polls would be open and the location of the election.  The notices stated only that the election would be "prior to" the regular Branch 504 membership meeting, which the second notice stated would begin at 6:30 p.m.  Members would have to inquire where to vote or infer

that the election would be held at the same location as the meeting.  Defendant does not offer anything material to rebut Plaintiff's facts regarding these deficiencies except to say that Branch 504 elections have always been held in the same place and time: opened at noon and closed immediately prior to the Branch 504 meeting at 6:30.  Defendant also admits that "the notice may not be as specific as one would hope."  Doc. 31 at 13.

Plaintiff has presented facts showing that the election notices failed to satisfy the "time and place" requirement.  A total of 501 members did not vote, which is a number larger than the margin of victory for every contested race.  *See* Deft's Fact 5 & accompanying table.  Defendant would have had a viable argument if it could show that failure of these individuals to show up for the election did not affect the outcome of the election because a sufficient number of members knew the time and location of the election from the union's past practice.  This would at least offer a plausible inference that deficiencies in notice content had no bearing on the election outcome.  However, Branch 504 provides no evidence that the 501 members who did not vote had actual notice of the time and place of the election.  As a result, Defendant fails to rebut the presumption that the election notice violation may have affected the outcome of an election in which 501 members did not vote and did not receive notice.  Therefore, Plaintiff is entitled to summary judgment on this aspect of the notice issue.

### III.    Disqualification of Martinez as Candidate

This last issue is perhaps the "meat" of this litigation. Plaintiff contends that Branch 504 violated §401(e) of the LMRDA by ruling that Martinez was ineligible to run for office.  The election committee determined that Martinez' record of DWI's and/or an allegedly false statement he made to the Alcohol and Gaming Division would jeopardize the union's liquor license, and render him unable to perform the duties of the office of Branch President.  Here

again, the material facts are undisputed and the question is whether Martinez' qualification complied with LMRDA requirements.

Plaintiff moves for summary judgment on this issue, arguing that neither Branch 504's governing documents nor federal or state law contains a basis for disqualifying Martinez as a candidate for branch president.  Plaintiff further argues that even if Martinez' holding office would have jeopardized the union's liquor license, maintaining a liquor license is not an eligibility provision in either the NALC Constitution, the NALC RGBEP or Branch 504's own bylaws.

A.    Officer Eligibility Under the LMRDA

Section 401(e) of the LMRDA provides that "every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 and to reasonable qualifications uniformly imposed)." 29 U.S.C. § 481(e). Section 504, in turn, makes ineligible for union office anyone:

> who has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of Title II or III of this Act, any felony involving abuse or misuse of such person's position or employment in a labor organization or employee benefit plan to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan, or conspiracy to commit any such crimes or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element . . . .

29 U.S.C. § 504(a). The Department's regulations recognize that labor organizations "may within reasonable limits adopt stricter standards than those contained in section 504(a)," including "barring from union office persons who have been convicted of crimes other than those specified." 29 C.F.R. § 452.34. The right of members to run for and hold office most often arises in the context of qualifications to be nominated for office and whether those qualifications are

"reasonable." The Supreme Court has held that the "reasonable qualifications" language of § 401(e) should not be read broadly. *Hotel, Motel & Club Emps. Union, Local 6*, 391 U.S. at 499; see also 29 C.F.R. § 452.36. Thus, courts have struck down a variety of eligibility requirements as unreasonable and therefore a violation of § 401(e). *See, e.g., Hotel, Motel & Club Emps. Union, Local 6*, 391 U.S. at 492 (prior office holding); *Herman v. Local 1011, United Steelworkers*, 207 F.3d 924, 928 (7th Cir. 2000). It is undisputed that Martinez' DWI history does not meet any of the crimes listed in §504(a).

The pertinent inquiry here is whether Martinez' disqualification was based on his failure to meet a "reasonable qualification" as defined by the LMRDA's interpretive regulations. Under these regulations, a qualification "which is not part of the constitution and bylaws or other duly enacted rules of the organization may not be the basis for denial of the right to run for office, unless required by Federal or State law." 29 C.F.R. §452.53 (emphasis added). Federal regulation also describes factors to consider in determining the "reasonableness" of qualifications, noting that this question "is a matter which is not susceptible of precise definition, and will ordinarily turn on the facts of each case" while cautioning that the definition should not be given a "broad reach." 29 C.F.R. §452.36(a) (citing *Wirtz v. Local 6,* 391 U.S. at 502). The regulations do provide some factors to be considered in assessing the reasonableness of a qualification for union office, and these are:

(1) The relationship of the qualification to the legitimate needs and interests of the union;

(2) The relationship of the qualification to the demands of union office;

(3) The impact of the qualification, in the light of the Congressional purpose of fostering the broadest possible participation in union affairs;

(4) A comparison of the particular qualification with the requirements for holding office generally prescribed by other labor organizations; and

(5) The degree of difficulty in meeting a qualification by union members.

§ 452.36(b).  *See, e.g., Wirtz v. Local 6*, 391 U.S. at 492 (bylaw limiting eligibility to prior office holding was  unreasonable and that evidence was insufficient to meet prima facie case, established by violation, that violation may have affected outcome of election); *Herman v. Local 1011,* 207 F.3d at 924 (union election attendance requirement, conditioning eligibility for local office on member's having attended at least eight of the local's monthly meetings in past two years, subject to certain exceptions, was unreasonable and thus invalid under LMRDA); *Donovan v. Sailors' Union of the Pacific*, 739 F.2d 1426 (9th Cir. 1984) (union constitutional provision that only those individuals who had been union members for three years or more could vote in officer elections was unreasonable). In addition, qualifications for office, even if reasonable on their face, "may not be proper if they are applied in an unreasonable manner or if they are not applied in a uniform way" and require that membership be provided "adequate advance notice . . . of the precise terms of the requirement."  29 CFR §452.53.

      B.      <u>Officer Eligibility Under the Union's Governing Documents</u>

According to the election committee, Martinez was rendered ineligible for office by "section 4.12 of the NALC Regulations Governing Branch Election Procedures and New Mexico State Law."  Ex. 20.  Martinez was informed that his "ongoing legal issues and other relevant facts" rendered him ineligible and unable to perform the duties of Branch President, pursuant to §4.12 of the RGBEP.  *Id.*

Two of Branch 504's governing documents prescribe the qualifications for branch office: the Branch bylaws, and §4.12 of the RGBEP.  The Branch bylaws state that all regular members are eligible to hold branch office except those who have been in or applied for supervisory positions in the previous two years. Ex. 17, Doc. 23-29 at 5.  Section 4.12 of the Regulations

adds that individuals convicted of certain crimes are ineligible to hold branch office.  These crimes track those listed in §504 of the LMRDA.  Ex. 4, Doc. 23-6 at 11.  This list does not include DWI-related crimes or making false statements to a state licensing agency (an "offense" for which Martinez was never charged).

      C.    <u>False Statement</u>

Defendant's position is that Martinez was disqualified from running for union office because he became unable to perform the duties of Branch President related to maintaining the union's liquor license.  To the extent that Branch 504 contends that Martinez' allegedly false statement was based on his DWI record, Martinez' statement could not be false.  Under New Mexico's Liquor Control Act, individuals who are convicted of two separate misdemeanors in any calendar year or of any felony, are prohibited from receiving or holding liquor licenses.  At the time of Branch 504's election nomination, Martinez had only one conviction and one charge of DWI.  By the time of his disqualification, the conviction had been reversed and the one DWI charge was still pending, to be dismissed at a later time.  *See* Pltff's Facts 50-54.  The only other alleged "false statement" is the one made by Martinez to the New Mexico Regulation and Licensing Department, Alcohol and Gaming Division in connection with Branch 504's liquor license renewal.

New Mexico's Liquor Control Act also requires suspension or revocation of a liquor license if the licensee's "agent has made any material false statement or concealed any material facts in his application" for the license. N.M. Stat. Ann. 60-6C-1.B(2).  In May 2014, Martinez submitted a signed and notarized statement as part of the liquor license renewal application in which he stated that he "[did] not have any control over the ordering of liquors or any direct supervision of bartenders."  Doc. 31-2 at 4 (attachment to Trujillo Aff.)   Defendant contends

that this statement is patently false, presenting evidence showing that Martinez was required as a Branch 504 officer to keep his officer liquor license updated, requiring each officer to have a server's permit, fingerprints and a notarized affidavit. Doc. 31-1 (Exec. Bd. Minutes) at 17). Defendant also presents evidence that Martinez was "in charge of the Club . . . and hopes to resolve the liquor problems [related to top shelf liquor disappearing from the Club] if the Trustees follow his instruction."  Doc. 31-1 at 18 (Mar. 13, 2014 Exec. Bd. Minutes ).

Martinez' May 2014 statement about his liquor responsibilities at the Club is in stark contrast with the facts concerning his actual Club responsibilities.  John Trujillo, then-President of Branch 504's election committee, became concerned about whether Martinez' recently discovered DWI charges and the statement he made as part of Branch 504's liquor license renewal application packet, would have an effect on his ability to manage the  liquor license.  *See* Doc.31-1, and 31-2 at 2-3 (Pratt and Trujillo Aff).   When the attention was brought to the attention of the state agency's citations manager, Ms. Duran told Branch President David Pratt that she would give Branch 504 more time to take care of the situation.

Plaintiff neither disputes nor confirms the fact that Martinez made the statement regarding his role in Branch 504's liquor duties, and takes no position as to whether the statement was false; therefore, the Court accepts these facts regarding Martinez' statement as undisputed.

Defendant contends that as a result of making these statements on the renewal application, Martinez had jeopardized Branch 504's liquor license and thus became unable to carry out his duties as Branch president.  The pertinent issue here, though, goes beyond the question of whether Martinez' statement jeopardized the liquor license, and rendered him unable

to maintain it, with the only question being whether Martinez' disqualification for this reason comports with §401(e) of the LMRDA.

D.     Relevance of Maintaining Liquor License to Officer Eligibility

As previously discussed, the LMRDA requires that eligible candidates have an opportunity to be nominated for office, subject to uniformly imposed "reasonable qualifications." 29 U.S.C. §481(e).  It is undisputed that Martinez' statements to the Alcohol and Gaming Division about his Branch 504 management duties which were at odds with his actual role in Branch 504's liquor business.  The dispute is over the legal import of these statements, even assuming that Martinez' statement to the Alcohol and Gaming Division was false.

Federal regulations promulgated under the LMRDA state that a qualification "which is not part of the constitution and bylaws or other duly enacted rules of the organization may not be the basis for denial of the right to run for office, unless required by Federal or State law."  29 C.F.R. §452.53.  A qualification must also be "specific and objective." 29 C.F.R. §452.53. Defendant offers facts meant to support its position that Martinez' inability to keep a liquor license was a "reasonable qualification" for candidate eligibility under the NALC Constitution and the Branch 504 bylaws.  However, none of these facts are supported by real evidence.  For example, Defendant observes that one of the duties of the Branch 504 President pursuant to the NALC Constitution is executing the necessary documents for Branch 504 to maintain its liquor license. Branch 504 President is required to "sign all warrants on the Treasurer ordered drawn by the Branch and all other papers ordered by the Branch."  Ex. 16, Doc. 31-2 at 2.  Under Branch 504 bylaws, the president is also required to see that Branch 504 officers perform their duties to the fullest extent of their capability and sign all documents requiring his/her signature.  Ex. 17, Doc. 23-29 at 7.  Defendant further adds that a "subsequent section" of the NALC Constitution

specifies that "[i]n addition to the duties assigned to each officer, he/she shall perform such other duties as the Branch may from time to time direct." Doc. 31 at 6.[5]   However, there is no reference in either of the two documents delegating to the President or any other officer, the responsibility to maintain the liquor license, and no specific provision that conditions eligibility to run for union office on the ability to maintain a liquor license.

In addition, even if the Court were to assume that maintaining Branch 504's liquor license was a "reasonable qualification" under §401(e), Defendant fails to show that it was sufficiently disclosed to constitute a reasonable qualification for candidacy. *See* 29 U.S.C. § 481(e); 29 C.F.R. §452.53 ("An essential element of reasonableness is adequate advance notice to the membership of the precise terms of the requirement").

 Defendant is left with the argument that maintaining Branch 504's liquor license is an unwritten duty of the President that is "implicit" in the Constitution and bylaws of Branch 504. Doc. 31 at 16 (maintaining the liquor license is "one of the duties the membership *expects* of their officers) (emphasis added); Doc. 31-2 (Trujillo Aff.), ¶9 (Branch President's duties "include managing the liquor license the Branch maintains for its private club").  The problem is that such a qualification does not meet the statutory standard because qualifications for office must be explicit.  *See* 29 C.F.R. § 452.53.  Plaintiff is therefore entitled to summary judgment on the disqualification issue because Defendant provides no evidence from either of the union's governing documents, or from federal or state law that is consistent with its position that Branch 504 officer eligibility requires an ability to maintain the union's liquor license.

   E.   Martinez' Removal from Duties as Vice President

---

[5]  Defendant provides specific cite for this "subsequent section" section in the 150-page NALC Constitution document located at Exhibit 16.  Doc. 31 at 6.

Martinez' removal from office was a disciplinary action taken as a result of Martinez' refusal to correct the statement he made on the liquor license renewal packet to the Alcohol and Gaming Division.  Plaintiff does not dispute the factual description of Martinez' removal from his duties as then-Vice President, but disagrees that this action was required or necessary under the union's governing documents.  Plaintiff contends that Branch 504's action in suspending then-Vice President Martinez did not meet the due process requirements set out in the LMRDA's safeguards against improper disciplinary action.  *See* 29 U.S.C. §411(a)(5); 29 C.F.R. §452.50 (procedural requirements for disqualification as a result of disciplinary action).

Plaintiff did not assert this due process claim in the complaint, and raises it for the first time in the reply.  The lawfulness of the procedure Branch 504 followed in removing Martinez from his position as Vice President is a different issue from Branch 504's determination that Martinez was ineligible to run for office.  Both sides have had an opportunity to address the eligibility issue and the Court has determined this issue in favor of Plaintiff.  Because Defendant would be prejudiced by the Court's consideration of the removal issue without having had a chance to respond to Plaintiff's assertions, and because the issue is not integral to the disqualification issue, the Court finds there is no reason to consider it further.  *See Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159 (10th Cir. 1998) (Where a reply contains new material or argument, courts must either refrain from relying on the new material or argument in ruling on the motion, or permit a surreply); *Garcia v. Luna Community College, et al.*, Civ. 04- 27 (D.N.M. February 1, 2005) (Doc. No. 69).

## CONCLUSION

In sum, the Court finds and concludes as follows:

1.     On the EXHAUSTION issue: Defendant is not entitled to summary judgment on the exhaustion issue and that Martinez properly exhausted internal union remedies regarding his election protest as a matter of law;

2.     On the NOTICE issue:

(a)     Plaintiff is entitled to summary judgment on the notice issue regarding the *first* election notice published in *El Sol,* based on Defendant's failure to raise a factual dispute as to whether the notice satisfied publication requirements under the LMRDA's interpretive regulations;

(b)     Plaintiff is entitled to summary judgment on the issue of whether the *second* notice published in the *Postal Record* satisfied notice requirements under the LMRDA and the statute's interpretative regulations because the placement of this second notice does not satisfy the requirement that an election be made "readily apparent" to union members, much less satisfy the regulation's "front page" requirements; and

(c)     Plaintiff is entitled to summary judgment on the issue of *notice content* as to time and place.  Defendant provides no evidence that a sufficient number of Branch 504 members who did not vote had actual notice of the time and place of the election in order to rebut the presumption that the election notice violation may have affected the outcome of the election.

3.     On the ELIGIBILITY/ DISQUALILFICATION issue:  Plaintiff is entitled to summary judgment because even if there were a factual dispute regarding whether Martinez' holding office in the union would jeopardize Branch 504's liquor license, that dispute would not create a genuine issue of material fact.  The ability to maintain Branch 504's liquor license is not a "reasonable qualification" necessary to run for union office under the union's governing documents, or under the relevant statutory and regulatory provisions.     Defendant's

disqualification of Martinez violated § 401(e) of the LMRDA by ruling an eligible candidate ineligible to run for office, and the Court further finds that the violation may have affected the outcome of the race for Branch President.

4. On the REMOVAL issue: The Court declines to address the due process issue related to Martinez' removal as then-Vice President because Plaintiff did not assert this claim in the compliant, and raised it for the first time in the reply. The Court also need not consider the issue because Defendant did not have the opportunity to respond to this issue and because it is not pertinent to the disqualification issue which both parties have been able to address.

5. Finally, the Court makes the observation that both parties presented their motions as "partial" summary judgment. Reviewing the complaint, the Court finds that there appears to be one claim remaining which Plaintiff has not sought summary judgment. This claim alleges that Defendant violated 29 U.S.C. §481(c) concerning equal treatment of all candidates in the distribution of campaign literature.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (**Doc. 22**) is hereby GRANTED as follows:

1. Plaintiff is GRANTED summary judgment on the *first* notice issue based on the notice published in *El Sol* for reasons described in this Memorandum Opinion and Order;

2. Plaintiff is GRANTED summary judgment on the *second* notice issue published in *Postal Record* for reasons described in this Memorandum Opinion and Order;

3. Plaintiff is GRANTED summary judgment on the issue of *notice content* as to time and place for reasons described in this Memorandum Opinion and Order; and

4.      Plaintiff is GRANTED summary judgment on the issue of Martinez' eligibility for running for union office, with the Court finding that Branch 504 violating 29 U.S.C. §481(e) of the LMRDA and that the violation may have affected the outcome of Branch 504's race for President;

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Partial Summary Judgment (**Doc. 32**) is hereby DENIED on all issues raised in the motion: exhaustion, notice and Martinez' eligibility and disqualification;

**IT IS FURTHER ORDERED** that, based on the Court's rulings, Plaintiff is entitled to the requested DECLARATORY RELIEF:

1.      As a result of Defendant's violation of the LMRDA and based on the Court's finding that the violation may have affected the outcome of the race for Branch 504 President, the Court hereby declares that the results of the Branch 504's November 2014 election of officers are hereby SET ASIDE; and that the Defendant's election for the offices of president, vice president, recording secretary, treasurer, sergeant at arms, and trustee (five positions) is hereby declared to be VOID;

2.      Defendant is hereby directed to conduct a new election for the election for the offices of president, vice president, recording secretary, treasurer, sergeant at arms, and trustee (five positions) under the supervision of the Plaintiff.


_____

UNITED STATES DISTRICT JUDGE