IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ED HUGLER, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BRANCH 504, NATIONAL ASSOCIATION OF LETTER CARRIERS,<br><br>　　　　　Defendant. | Case No. CIV 15-391 WJ/KK<br><br>CERTIFICATION OF SUPERVISED ELECTION |

## DECLARATION OF SHARON HANLEY

I, Sharon Hanley, am the Chief of the Division of Enforcement, Office of Labor-Management Standards (OLMS), United States Department of Labor (Department). The Department supervised an election of officers of Defendant Branch 504 of the National Association of Letter Carriers (NALC), which was completed on November 16, 2016, pursuant to an order dated May 11, 2016, issued by this Court. Pursuant to that order, the entire election was conducted under the supervision of the Secretary.

On June 27, 2016, all candidates and election committee members involved in Branch 504's 2014 election were mailed invitations to attend a pre-election conference. The pre-election conference was held at 5:00 p.m. on July 19, 2016, in Branch 504's meeting hall located at 123 Quincy Street NE, Albuquerque, NM 87108. The purpose of the conference was to develop election rules and procedures and to establish timeframes to be used in conducting the election. The conference was open to all interested parties and provided attendees the opportunity to participate in formulating the election rules by presenting pertinent materials and comments.

At the pre-election conference, Janice Murphy-Reaves — an OLMS investigator designated as the Election Supervisor — established the election rules, including nomination and election procedures, protest procedures, and time frames for Branch 504's supervised election. The Election Supervisor advised the attendees that the Department was responsible for assuring the conduct of a fair election under the Labor Management Reporting and Disclosure Act of 1959 (LMRDA) and, insofar as lawful and practicable, in accordance with the NALC Constitution, the NALC Regulations Governing Branch Election Procedures (RGBEP), and the bylaws of Branch 504. The Election Supervisor advised attendees that the election rules were subject to modification.

By letter dated August 8, 2016, the Election Supervisor mailed copies of the rules established at the pre-election conference to all invitees to and attendees of the pre-election conference. Each candidate received another copy of the election rules at the September 21, 2016, candidates' meeting, which was held directly following the nominations meeting.

The Election Supervisor had the authority and responsibility for implementing all aspects of the supervised election. The Election Supervisor recommended that President David Pratt appoint election committee members as soon as possible so they could participate in the election process. Pratt did not appoint election committee members. Following nominations on September 21, 2016, the Election Supervisor asked members to volunteer to work on the election committee. Initially seven members volunteered, but on the day of the election, only one of the volunteers helped conduct the election under the supervision of the Department.

The supervised election was conducted for the offices of president, vice president, recording secretary, treasurer, trustees (five positions), and sergeant at arms.[1] The results of the election were submitted to this Court as Exhibit A to Plaintiff's Status Report filed on February

---

[1] The race for health benefits representative was unopposed and was not included on the ballot.

10, 2017 (Doc. No. 45). There were no slates, and a mixture of incumbents and challengers won election.

The protest procedure delineated in the election rules required that "all protests concerning the conduct of the election must be in writing and received by the OLMS Election Supervisor . . . ." The Department received one pre-election protest from John Trujillo, one pre-election protest from Pratt, and one post-election protest from Pratt. The substance of the allegations in the protests is summarized below, followed by the Department's resolution of each allegation.

John Trujillo's pre-election protest dated July 19, 2016

Allegation: Trujillo, who supported Pratt for president, alleged that Angel Martinez, the candidate challenging Pratt, threatened him at the pre-election conference on July 19, 2016, by approaching him, raising his arm, and asking, "Am I making you nervous?"

Response: Section 610 of the LMRDA prohibits "the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of" the LMRDA. 29 U.S.C. § 530. Martinez's behavior as alleged by Trujillo, even if it occurred as Trujillo described,[2] did not rise to the level of a violation of the LMRDA. Nevertheless, the Election Supervisor mailed a letter to Martinez dated August 2, 2016, explaining to him the relevant provisions of the LMRDA and requesting that he not attempt to threaten or intimidate union members for exercising their LMRDA rights. The Election Supervisor received no further complaints regarding threats or intimidation by Martinez or anyone else. Any threat or intimidation did not

---

[2] The Election Supervisor observed Martinez approach Trujillo at the pre-election conference but could not hear what Martinez said.

3

prevent Trujillo (or Pratt) from exercising his rights under the LMRDA. There was no violation of the LMRDA.

David Pratt's pre-election protest dated October 5, 2016

Allegation: Pratt alleged that Martinez was campaigning on employer time and property and that the Department was favoring Martinez by allowing this unlawful campaigning to occur. Pratt identified two members who he said witnessed Martinez's alleged campaigning to other members on employer time and property.

Response: Section 401(g) of the LMRDA prohibits the use of employer funds to promote any candidate for union office. 29 U.S.C. § 481(g). Members therefore may not campaign on time that is paid for by the employer or use employer funds or facilities to assist in campaigning. *See* 29 C.F.R. § 452.78. The Election Supervisor interviewed Martinez and both of the witnesses identified by Pratt, as well as a third union member who was among the group to whom Martinez was allegedly campaigning. The two witnesses identified by Pratt stated that they observed Martinez passing out doughnuts and talking to other members; they could not confirm that he was campaigning. One of the witnesses stated that he heard the word "election," but he acknowledged that he did not hear Martinez asking members to vote for him. The other witness identified by Pratt could not hear Martinez's conversation at all, but she thought that he was campaigning. The third member interviewed stated that he was talking about work with Martinez and that Martinez was not campaigning to him. When interviewed, Martinez acknowledged bringing in doughnuts to work and sharing them with his coworkers and management, but he denied ever campaigning while on employer time or to coworkers while they were on employer time. There was no violation.

David Pratt's post-election protest received on November 22, 2016

Allegation 1: Pratt alleged that two members who did not request absentee ballots received them in the mail.

Response 1: The LMRDA does not prohibit unions from sending out absentee ballots. Further, the Department's investigation yielded no evidence that members received absentee ballots they did not request. Neither of the two members identified by Pratt appeared on the Department's absentee ballot request log. There was no violation.

Allegation 2: Pratt alleged that one member received two absentee ballots in the mail.

Response 2: Section 401(e) of the LMRDA provides that each member in good standing is entitled to one vote. 29 U.S.C. § 481(e). The Department's investigation confirmed that no member cast more than one ballot. There was no violation of the LMRDA.

Allegation 3: Pratt raised several allegations regarding the processing of absentee ballot requests. Pratt alleged that twenty-five members who requested absentee ballots, many of whom stated that they would have voted for him, did not receive them. He also alleged that the Election Supervisor took leave during the week prior to the closing of the absentee ballot request deadline. He attached a signed statement from incumbent Vice President Dale Fogle alleging that Fogle received many complaints that members were not able to contact the Election Supervisor that week to request an absentee ballot or to inquire why they had not receive their absentee ballots. Finally, he alleged that the Election Supervisor favored certain candidates, disfavoring him and other officers, and that she knew from the 2014 election that absentee ballot response was important.

Response 3: As noted above, the LMRDA provides that each member in good standing is entitled to one vote. 29 U.S.C. § 481(e). The election rules for the Branch 504 election

established that any member who would be unable to visit the polls on election day could request an absentee ballot by email or by fax to the OLMS office in Denver. Members could submit their requests from October 3 through November 2, 2016. The combined nomination and election notice mailed to all members on August 10, 2016, contained those absentee ballot request instructions along with the OLMS Denver office's fax number and email address, as well as telephone numbers for the Election Supervisor's direct line and for the OLMS Denver office's main line. On September 27, 2016, Martinez and two other challenging candidates requested that members' absentee ballot requests also be accepted by mail; the following day, Fogle requested that members' absentee ballot requests be permitted to be sent from the union's fax machine. The Election Supervisor granted both requests and, on September 28, 2016, disseminated an election reminder containing the revised instructions for requesting absentee ballots. The reminder was mailed to the union to post on all union bulletin boards and emailed to candidates and election committee members.

The Department's investigation confirmed that the OLMS Denver office processed all of the absentee ballot requests it received and that it conducted the process in an impartial manner.

Of the twenty-five members identified by Pratt, the Department's investigation revealed that nine cast ballots in the election; four of the individuals' absentee ballot requests were received and processed by OLMS, but the members did not cast ballots in the election; and one of the individuals was not on the membership list.

However, the Department's investigation disclosed that the remaining eleven members identified by Pratt attempted to fax their absentee ballot requests to the OLMS Denver office using the union's fax machine (or their stewards or officers attempted to fax requests on their behalf), but OLMS never received the requests, and those eleven members did not cast ballots in

the election. Pratt provided fax transmittal reports for eight of those members indicating successful transmissions. The Department's investigation revealed that an unidentified person programmed the OLMS Denver office's fax number into the union's fax machine without a "1" preceding the number. The Department confirmed that using the preprogrammed fax number did not result in a successful fax to OLMS — even though the union's fax machine generated a successful transmission report for the sender — but entering the number manually to send a fax did result in a successful transmission. Each of the fax transmittal reports provided by Pratt for absentee ballot requests that OLMS never received indicated that the preprogrammed fax number was used.

None of the eleven members contacted the Election Supervisor (or anyone at the OLMS office in Denver) to inquire about their absentee ballots. When interviewed, Fogle acknowledged that he never advised any of the members who complained to him about not having received absentee ballots to contact the Election Supervisor, and he himself never contacted her or the election committee to follow up on members' complaints.

While the Election Supervisor was on leave October 24–28, 2016, her direct line's outgoing voicemail message directed callers to contact the office's main line for assistance with Branch 504's election. Either the Election Supervisor or her designee during her absence, OLMS Investigator Vicky Cruz, responded to every absentee ballot request and inquiry received during the entire absentee ballot request period. From October 24 through October 28, 2016, Cruz received and processed thirty-five absentee ballot requests from Branch 504 members, including two requests transmitted by fax. The Election Supervisor returned to the office on October 31, 2016. Even after the absentee ballot request period closed on November 2, 2016, the Election

Supervisor continued processing absentee ballot requests received until November 14, 2016, two days before the election.

No member was denied the right to vote. There was no violation of the LMRDA.

<u>Allegation 4</u>: Pratt alleged that the election rules' lack of a requirement that the member sign the absentee ballot return envelope violated Branch 504's bylaws.

<u>Response 4</u>: Article V section 3.c of Branch 504's bylaws requires members who vote by absentee ballot to provide their full name and signature on the outside envelope. However, the Department was responsible for assuring the conduct of the election in accordance with the Branch 504 bylaws only insofar as it was lawful and practicable to do so.

Branch 504's signature requirement would be legitimate if its purpose were to determine voter eligibility. *Cf.* 29 C.F.R. 452.97(c) (permitting a signature requirement for that purpose in mail ballot elections). However, Branch 504 had no existing list of members' signatures for comparison and, therefore, no practicable method of using the signatures to verify eligibility. Under the election rules established for the supervised election, voter eligibility was instead verified by including the voter's name and mailing address printed on the absentee ballot return envelope. There was no violation of the LMRDA.

<u>Allegation 5</u>: Pratt raised several allegations that the Branch 504 bylaws were violated in connection with the selection and operation of the election committee: that only one member ultimately served on the election committee; that the committee had no knowledge of or input into the distribution of absentee ballots; and that the committee did not review candidate eligibility.

<u>Response 5</u>: Article V section 4 of the Branch 504 bylaws requires the president of Branch 504 to appoint a three-member election committee "[a]fter the nominations and no later

than 21 days prior to the election" and states that members of the election committee may not be candidates for office. The provision continues that the election committee is to "be in charge of all election procedures" and specifies such duties as processing absentee ballot requests, checking voter eligibility, and tallying ballots. NALC RGBEP sections 7, 8, and 10 contain similar provisions and further specify, in section 8.1, that the election committee is responsible for determining the eligibility of the nominees for office. As noted above, however, the Department was responsible for assuring the conduct of the election in accordance with the NALC Constitution, NALC RGBEP, and Branch 504 bylaws only insofar as it was lawful and practicable to do so.

During her initial meeting with Pratt on May 11, 2016, the Election Supervisor recommended that Pratt appoint the election committee members as soon as possible so they could participate in the election process. Pratt responded that Branch 504's bylaws provided for appointment of the election committee only after nominations and that he could not appoint members until then because he did not know who would be running for office. The Election Supervisor asked Pratt to appoint an election committee as soon as possible again in July 2016 and September 2016, but Pratt did not do so. The nominations meeting was scheduled for September 21, 2016.

In the week prior to the nominations meeting, the Election Supervisor requested and received the necessary membership records from NALC to determine members' eligibility to nominate members for office and to run for office during the nominations meeting. Because no election committee was in place at the time of nominations, it was not practicable for the election committee to review candidate eligibility. Therefore, the Election Supervisor reviewed the records from NALC and determined candidate eligibility herself. She ruled that one member

9

nominated for office was not eligible under the NALC RGBEP and Branch 504 bylaws. Pratt does not allege that any of the Election Supervisor's candidate eligibility determinations were made in error.

Pratt did not attend the nominations meeting on September 21, 2016; Fogle chaired the meeting in his absence. Pratt had neither appointed an election committee nor provided any names of members for Fogle to appoint. Therefore, after the close of nominations, the Election Supervisor asked for volunteers to work as tellers on the day of the election. Seven members initially volunteered, but by the day of the election, only one remained. On the day of the election, that member assisted in retrieving the absentee ballots from the post office box, served as a teller at the polls, and certified the conduct of the election and the ballot tally.

Regarding the processing of the absentee ballot requests, given Branch 504's location in Albuquerque, New Mexico, and the Election Supervisor's location in Denver, Colorado, it was not practicable for the election committee to be involved in processing absentee ballot requests, which were received and processed over a period of several weeks. As provided for in the election rules, the OLMS office in Denver processed all absentee ballot requests. Pratt was present at the pre-election conference on July 19, 2016, at which that procedure was established, and he raised no objection at that time or when he received the election rules mailed on August 8, 2016.

The Election Supervisor conducted the election in accordance with the NALC Constitution, the NALC RGBEP, and the Branch 504 bylaws to the extent practicable under the circumstances. There was no violation of the LMRDA.

Allegation 6: Pratt alleged that candidates' observers did not have access to observe the absentee ballot distribution process.

Response 6: Section 401(c) of the LMRDA requires unions to provide adequate safeguards to ensure a fair election, "including the right of any candidate to have an observer at the polls and at the counting of the ballots." 29 U.S.C. § 481(c). The Department's regulations give candidates the right, in a mail ballot election, to have an observer present when the ballots are prepared and mailed. 29 C.F.R. § 452.107(c); *see also* NALC RGBEP section 11.8(a). Regardless of whether that right extends to observing the distribution of absentee ballots in a polling place election, the Election Supervisor would have granted any candidate's request to have an observer present during the absentee ballot distribution process. However, no candidate, including Pratt, made any such request. There was no violation of the LMRDA.

Other allegations: Pratt's post-election protest also included the two allegations he had raised in pre-election protests. As discussed above with regard to those pre-election protests, there were no violations of the LMRDA in connection with those allegations.

The Department has concluded from its investigation that Branch 504's November 16, 2016, election of officers, conducted under the Department's supervision, complied with Title IV of the LMRDA and was conducted, insofar as lawful and practicable, in accordance with the NALC Constitution, the NALC RGBEP, and the bylaws of Branch 504. Therefore, no reason exists to overturn the results of this supervised election.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of February, 2017, in the City of Washington, District of Columbia.

Sharon Hanley, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor